## Case No. 2,944.

### The COERNINE.

[21 Law Rep. 343; 7 Am. Law Reg. 5; 39 Hunt, Mer. Mag. 197.]

District Court, S. D. New York. May Term, 1858.

MARITIME CONTRACT—LIEN BY STATE STATUTE.

1. A contract by parties, resident in New York, with a citizen of North Carolina, to furnish labor, materials, and stores for building and equipping a vessel in North Carolina is not a maritime contract within the admiralty jurisdiction of the federal courts, and no lien is thereby created which can be enforced in rem.

[Cited in Whitlock v. The Thales, Case No. 17,578; Smith v. The Royal George, Id. 13,102.]

2. It seems that no enactment by a state legislature can be administered as the foundation of any right or remedy in admiralty. It is therefore immaterial whether any lien is given by a state law, or whether such law is of any force out of the limits of such state.

[2][The libellants, ship-chandlers and traders, residents and doing business in New York, were in the habit of dealing on credit in the line of their trade with Gilbert L. Moore, a resident of Williamston, in North Carolina, engaged in building and sailing vessels. and other transactions, in that state. The correspondence between those parties proves that such course of dealing was in use between them anterior to the month of September, 1856, and was continued subsequently on open accounts of debit

[1] [Reported by Samuel H. Hempstead, Esq.]
[2] [From 7 Am. Law Reg. 5.]

and credit. At that time, in an interview between them in New York, it was agreed that the libellants should supply the equipments and outfits necessary to complete the schooner Coernine, which Moore was about constructing at his residence in North Carolina, and that they should furnish whatever should be required to that end upon the written or verbal orders of Moore. On the 5th of March, 1857, Moore wrote the libellants from Williamston by Samuel D. Hines, introducing the latter as the intended master of the Coernine when completed. and requesting that his memoranda of materials and supplies should be filled by the libellants "at as low rates as possible," the large amounts of course on the regular times, "in order to give the vessel some time to make a port before it is due;" "the small memoranda of which I shall expect to pay between one and three months;" for instance "the bill for making sails, iron works, &c." The same letter had advised the libellants that Moore would, between July and September, pay them a considerable amount for the purchase of the sails and rigging for the Coernine; those, as it appears from the correspondence between the parties, being articles not dealt in by the libellants, but with some others were to be purchased by them in New York for Moore. By letters of dates of March 14 and 20, the libellants advised Moore that they were hastening to fulfill all Hines' orders; that hemp, sails, blocks, &c., had been purchased by them. On the 28th March they further wrote that all the goods were then ready, and requested a remittance of funds, as they had to make large purchases. and their payments for duck, &c., "then, for the next sixty days, will be heavy." By letters of April 8, the libellants informed Moore that the goods were all on board the vessel at New York, for transportation to North Carolina, and that they inclose "bill of lading and amount of supplies. amounting in all to $4,074.35," "the cash bills, amounting to $916.77," they desired him to remit immediately. On the 11th July, 1856, Moore executed at North Carolina, a promissory note to the libellants, or order for $600, payable at ninety days, and on the 31st of July, at the same place. another note for the same amount ($600), payable in ninety days thereafter to the libellants. or order; and on the 24th of September, following another promissory note, dated at New York, payable to libellants or order for $1,000, four months after date. These several promissory notes were produced in open court by the counsel for the libellants on the hearing of the cause, as having been given for the debt in prosecution, and were delivered up to be cancelled.

[It appeared in proof that the materials supplied by the libellants were necessary for the construction and use of the schooner, and could not have been procured at the place where she was built and fitted out. They were supplied for her service, and after her completion she was dispatched by Moore, her owner, from Plymouth, North Carolina, her port of registry, upon a series of foreign voyages. June 2, 1857, she sailed for Guadaloupe, thence to Marie Galante, thence to St. Pierre, Martinique, thence to the Island of Nevis, on trading voyages; thence to St. Thomas, where she was chartered for Porto Rico and New York, at which last place she arrived in the month of August, remained in the port fifteen days at quarantine, and eight days afterward in discharging and reloading, and on the 22nd day of September sailed again on round charters by the way of the West Indies back to New York, where she arrived Jan. 26, 1858, and the libel in this cause was filed the next day. The libellants were personally apprised of the vessel being in this port within two or three days after her first arrival here, and also knew the whole period of her continuance in port. The libellants charged that the schooner being in Wilmington, N. C., and in want of ship chandlery, sails, rigging, materials, labor and supplies, to render her seaworthy and fit to navigate the high seas and proceed upon a voyage to the West Indies, they furnished and delivered such articles to the vessel at that place, &c. These claimants intervened and set up a title to the vessel under an assignment of her in trust for the payment of debts made to them by Gilbert L. Moore prior to the commencement of this action; and by formal answer they denied every material allegation in the libel upon which the action is based. They especially denied the jurisdiction of this court over the subject matter. and insisted on the argument upon an explicit judgment upon that branch of the defence, because of its eminent importance to the interests of navigation and commerce in American vessels, and because it is supposed the law governing that subject is obscure or indefinite in its provisions, or has become seemingly so, under the rules by which it is interpreted and administered by the courts.

[There was also a separate intervention and defence to the action in the name of James C. Willett, sheriff of the city and county of New York, who interposed and claimed the vessel by virtue of process of attachment out of a state court in favor of a creditor of Gilbert L. Moore, the alleged owner of the schooner. This branch of the defence was disposed of at the last May term of the court, on an issue in law (24 MS. Dec. 40) and will not be further regarded in the report of this case.] [1]

N. Hoxie and E. C. Benedict, for libellants.

J. Gerard, Jr., and B. D. Silliman, for claimants.

---

[1] [From 7 Am. Law Reg. 5.]

BETTS, District Judge. The libellants place their right of action in this cause upon the grounds that the transaction between them and Gilbert L. Moore, in relation to the outfit and supply of materials for building and equipping the schooner Coernine, was a maritime contract concerning a foreign vessel and her employment in navigation and commerce, and that a debt was thereby created which became by implication of law a lien upon the vessel, accompanying her wherever she went; or that by the local law of North Carolina, under which she was built, registered and owned, and where the supplies were used, the schooner was made subject to a lien for that debt, which, by the principles of the general maritime law, is enforceable in this court. The position on the part of the claimants is, that this court has no jurisdiction over the subject matter of the suit, in any aspect of the case under which it is presented by the pleadings and proofs, and the cases of Pratt v. Reed, 19 How. [60 U. S.] 359, and People's Ferry Co. of Boston v. Beers [20 How. (61 U. S.) 393],[1] are relied upon as having settled, by the solemn adjudications of the supreme court, the law definitely to that effect. In view of the magnitude of interests depending upon the general question in this district, and its importance practically in the every-day business dealings within the port between mechanics and material men, and ship-owners and masters, it is deemed desirable that this specific point should be made the prominent subject of consideration and decision: especially if those judgments of the supreme court have worked any change in the rules heretofore applied to this class of cases, and have diminished the securities formerly enforced in this court in behalf of that order of creditors.

In the first place, it is important to consider what were the special features in the case of Pratt v. Reed [supra] adjudged upon by the supreme court, and what character was affixed by that decision to the contract or credit in regard to necessaries supplied a foreign vessel on a voyage, in order to give them a privilege or lien against the vessel. The steamboat Sultana was employed on the western lakes in the transportation of passengers and freight. She was enrolled and owned at Buffalo, and a debt was contracted at Erie, Pennsylvania, by her owner and master, for supplies of coal to her during the performance of a succession of trips, for a period of about two years. It was assumed by the court to have been necessary for the navigation of the vessel, that she should be furnished with coal on those occasions, although the proof on that head was held to be loose and indefinite. The libellant furnished her coal in that manner when demanded, from June, 1852, to May,

1854, and rendered a bill therefor, containing a running account of debits and credits. The owner of the boat usually navigated her as master, and was present when the supplies were furnished. When he was not present they were furnished at the request of the person in command. The answer denied that the supplies were furnished on the credit of the boat, and averred that they were furnished on the credit of the master. The court laid out of view the inadequacy of proof that the supply of coal was an actual necessity to the navigation of the vessel, within the admiralty rule, at the time it was supplied her, because of the more serious difficulty in the case of the libellant, in the entire absence of any proof to show that there was also a necessity at the time, of procuring the supplies, for a credit upon the vessel, which was asserted by the court to be as essential as that of the necessity of the article itself. "It seems to be supposed," the court remarks, "that circumstances of less pressing necessity for supplies or repairs, and an implied hypothecation of the vessel to procure them, will satisfy the rule, than in case of a necessity sufficient to justify a loan of money on bottomry for the like purpose. We think this is a misapprehension." The court proceeds to fortify the position of law taken by them on those facts, by reasoning against the sufficiency of the facts to authorize an implication of a lien in the case, and by an intimation strongly disfavoring the increase of maritime liens of this class, upon the lakes and rivers, as tending to perplex and embarrass business, rather than furnish facilities for carrying forward, and declaring that such liens should be strictly limited to the necessities of commerce which created them. The jurisdiction of the court over the question is one and the same when it concerns the business of commerce and navigation between ports and places in different states and territories upon the lakes and navigable waters connecting the lakes, as is possessed and exercised in case the vessels are employed in navigation and commerce upon the high seas or tide-waters within the admiralty and maritime jurisdiction of the United States. Act Cong. Feb. 26, 1845 (5 Stat. 726).

The similitude, and indeed identity, of the present case with that of Pratt v. Reed, in their leading features, appear thus to be nearly exact. In both instances the supplies and necessaries were obtained in ports of states foreign to those to which the vessels respectively belonged, and were procured through the direct contract and orders of the owner, who also, in each case, was master of the vessel at the time. In neither case was there any stipulation for direct payment of the purchase prices at the time of purchase, nor any terms of credit agreed upon between the parties. The decision in Pratt v. Reed, therefore, in no way rested upon a question of implied authority in a

[1] [From 7 Am. Law Reg. 5.]

master to pledge a vessel on such a credit, because the dealing was by the owner directly; but the controlling consideration which governed the case was, that however imminent the necessity of the vessel for the supplies might be,. the case could not be brought within the cognizance of the federal court, unless it appeared that the necessity was equally urgent that the responsibility of the vessel should be pledged for payment. It seems to me, therefore, that the case of Pratt v. Reed is susceptible of no other interpretation than .that an implied lien for stores, materials, supplies, or outfits of any kind, can never be raised against an American vessel in the courts of the United States upon the mere fact that they were furnished her on credit out of her home port and are necessary to her navigation and employment. The further fact must be shown, that the supplies could not be obtained on the personal credit of her owners. That principle covers and negatives every claim to a hypothecation of the schooner in security of the debt in the present case. It is unnecessary to go further, and say the doctrine of the decision significantly implies that the act of the owner of the vessel in personally incurring the debt and obtaining the credit has no higher effect in imparting a lien than the act of a master solely, for the entire dealing in that case appears to have been conducted or sanctioned personally by the owner himself. The particulars in which the present case is distinguishable from that, weaken, instead of strengthening, the presumption that both parties contemplated at the time of the sale and purchase of the materials furnished by the libellants any lien therefor upon the schooner; but for the reasons before suggested I do not recapitulate and press the considerations arising out of the pleadings and proofs tending to show that no liability against the vessel was in view of the parties at the time, and that the dealing was more probably on the footing of their accustomed transactions, and wholly one of personal credit. One distinction, however, ought not to be passed by, which is, that the materials, labor, &c., obtained in this case, were not for the necessary repair of this schooner, but were for her original construction, she then being on the stocks in a course of building. It is intended to dispose of this case in subordination to the judgment of the supreme court in the two recent cases referred to, and to restrain it carefully within the fair and plain import of the doctrines laid down in those decisions without any inquiry into the correspondence or disaccord of those judgments or either of them, with the rule of law antecedently prevailing in maritime courts upon those subjects. It is not the province of this court to canvass the reasons upon which those decisions are founded, or attempt to measure their validity by any supposed inconsistency or incongruity with prior doctrines of the supreme court. They stand the final existing law which governs analogous facts coming within their just scope and meaning.

People's Ferry Co. of Boston v. Beers was a case decided by the supreme court in December term, 1857 [20 How. (61 U. S.) 393.] [1] A vessel, owned in New Jersey, was built and supplied with materials in that state by the libellants, residents in New York, on credit, and without any express pledge of the vessel for the debt. The propositions of law determined by the court, and the facts to which they are applied, are specifically stated by the judge who delivered the opinion of the court. "The only matter in controversy is (say the court) whether the district courts of the United States have jurisdiction to proceed in admiralty to enforce liens for labor and materials furnished in constructing vessels to be employed in the navigation of waters to which the admiralty jurisdiction extends." "We have the simple case," continues the judge, "whether these ship carpenters had a lien for work and materials that can be enforced in rem in admiralty." "The question presented involves a contest between the state and federal government. The latter has no power or jurisdiction beyond what the constitution confers. The contest here is not so much between rival tribunals, as between distinct sovereignties claiming to exercise power over contracts, property, and personal franchises." "What were meant in 1789 by 'cases of admiralty and maritime jurisdiction,' must be meant now. What was reserved to the states to be regulated by their own institutions, cannot be rightfully infringed by the general government, either through its legislation or judiciary department." "The contract (in the case) is simply for building the hull of a ship, and delivering it on the water. 'She was constructed and delivered according tô the contract.' The admiralty jurisdiction is limited to contracts, claims, and services purely maritime, and touching rights and duties appertaining to commerce and navigation.' Judge Hopkinson, in 1781, declared, as respects ship-builders, that the practice of former times doth not justify the admiralty's taking cognizance of their suits. 'We feel warranted in saying that at no time since this has been an independent nation has such a practice been allowed.'" The judge adds: "It is proper, however, to notice the fact, that district courts have recognized the existence of admiralty jurisdiction in rem against a vessel to enforce a carpenter's bill for work and materials in constructing it. in cases where a lien had been created by the local law of the state where the vessel was built. Thus far, however, in our judicial history, no case of the kind has been sanctioned by this court." This ad-

---

[1] [From 7 Am. Law Reg. 5.]

judication very explicitly determines that a contract in a port of one of the United States, to construct a vessel in a port of another state by actually building her or supplying materials for such construction, is not a maritime contract creating a lien upon the vessel, for the value of the labor or supplies, which can be enforced in a federal court. That the debt or contract does not make a case of admiralty and maritime jurisdiction within the meaning of the constitution and laws of the United States; and if it may be any way cognizable in those tribunals, it is only by the force of state legislation, imposing the debt as a lien on the vessel, which obligation the national court executes and carries into effect; but the same judgment emphatically declares that no instance of such proceedings, which appear to have occurred in some of the inferior national courts, has been sanctioned by the supreme court. I had never supposed the jurisdiction of the United States district courts over this class of liens was imparted by state legislation, or that those tribunals could in any way derive judicial competency or jurisdiction from state grant; and without being restrained by the significant intimation of the supreme court, I should not be any way inclined to administer affirmatively, as the foundation of a right and remedy in admiralty, any enactment by a state legislature. Considering that the decision last referred to withdraws from the cognizance of this court the subject-matter of the present action, as not being one of admiralty and maritime jurisdiction, I deem it wholly useless and extrajudicial to inquire whether the statute of North Carolina, put in evidence in this cause, is applicable in its provisions to the contract and debt now in suit, or is of any force out of the territorial jurisdiction of that state. The labor claimed by the libellants to have been furnished this schooner in North Carolina must be understood to be the work of builders, personally or by their agents, and falls directly within the judgment of the court, as not a claim of a maritime character.

The latest decision of the supreme court upon a legal question within its jurisdiction settles for the government of all inferior judicatories the practical meaning and force of the proposition so determined; and it is no part of the function of subordinate courts to adjudge, or even inquire whether such determination comports with, or subverts, antecedent judgments, of the same forum, upon similar questions. The last decision is, practically, the final one. Neither of the two cases last passed upon by the supreme court, in relation to implied liens in favor of material men and laborers, against American vessels in American ports, demanded the direct and broad answer to the inquiry whether those liens exist or can be enforced in the federal courts in any form, by virtue of the general maritime law; but the principles announced by the court, in those cases, render it quite palpable that scarcely another advance remains to be made in order to abrogate that remedy absolutely, and reinstate and restrict the admiralty powers of the judiciary in respect to those credits, in subordination to the rule of the common law as that was administered under the English jurisprudence, at the time of the adoption of the United States constitution. It is my province to accept and pursue the law as declared by the supreme court; and, in my opinion, the rule established by that tribunal, in those cases, determines that the claim put forth in this action, either for building or constructing, or outfitting or providing materials, supplies, labor, rigging, or ship-stores necessary to render this vessel sea-worthy, and fit for navigation at sea, is not within the jurisdiction of the court, and accordingly the libel must be dismissed with costs.

The amount in demand being sufficient to authorize an appeal of the case to the court of last resort, I put the decision specifically upon the question of jurisdiction, that being directly involved, and being a point of high practical moment to the mercantile, manufacturing and shipping interests of the country, and shall forbear discussing those other features in the case bearing strongly against the adequacy of the pleadings and proofs to sustain the action in this form, if the cases of Pratt v. Reed [supra] and People's Ferry Co. of Boston v. Beers [supra] had interposed no legal impediment to the suit. Decree accordingly.